IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK WHALEN and JAKE WHALEN,

                Plaintiffs,

v.

DANA MACKENZIE and TYLER SELK,

                Defendants.

OPINION and ORDER

24-cv-342-jdp

---

    Father-and-son plaintiffs Mark and Jake Whalen sued Waunakee high school basketball coaches Dana MacKenzie and Tyler Selk under 42 U.S.C. § 1983 for their alleged retaliatory decision to cut Jake from the basketball team after Mark publicly asserted that defendants misappropriated funds from a basketball camp booster.[1] In August 2023, as part of ongoing attempts to oust defendants from the basketball program, Mark spoke to the Waunakee Police Department (WPD) about defendants' alleged fraud, spawning an investigation. Plaintiffs have now served a subpoena on the WPD seeking the files generated during the investigation. Dkt. 18-1 at 3. Defendants have moved to quash that subpoena. Dkt. 17. For the following reasons, defendants' motion to quash is GRANTED in part and DENIED in part. The subpoena is overly broad, so the court will modify it under Rule 45(d)(3) so that it seeks only those investigative reports that contain or refer to statements made by defendants. The WPD is ORDERED to comply with the subpoena as amended and produce these limited reports to the parties so that the parties may mark them under a forthcoming protective order, as set forth below.

---

[1] Because the two plaintiffs share a last name, the court refers to each by his first name for the sake of clarity.

BACKGROUND[2]

Plaintiffs Mark and Jake Whalen are father and son. Dkt. 6 at 3. Jake played basketball for the Waunakee Community School District (WCSD) basketball team. *Id.* Defendants are or were at some point coaches for the team. *Id.* Defendants also operated youth basketball camps that utilized WCSD basketball courts and facilities. *Id.* Plaintiffs allege that a large percentage of the basketball camp proceeds went directly to defendants, despite language in the online sign-up portal suggesting the proceeds funded a youth basketball program. *Id.*

Disapproving of defendants' allegedly fraudulent basketball camps, Mark and other parents called to remove defendant MacKenzie as head coach. *Id.* at 4. Mark publicly accused defendants of fraudulent practices at a schoolboard meeting with MacKenzie present. *Id.* Shortly thereafter, Jake, who played on the varsity team coached by MacKenzie, saw a steady decline in the amount of time he played, occasionally sitting out entire games. *Id.*

In August 2023, Selk replaced MacKenzie as head coach. *Id.* at 7. Also in August, Mark spoke to the Waunakee Police Department (WPD) about defendants' alleged fraud. *Id.* As a result, WPD launched an investigation into Mark's claims and interviewed both defendants. *Id.* During the interviews, defendants allegedly inquired whether Mark was behind the allegations. *Id.*

Later that year, following the tryouts for the 2023–24 season, Selk cut Jake from the team. *Id.* at 8. Plaintiffs filed suit, alleging the decision to cut Jake was retaliation against plaintiffs for their calls to remove defendants from the school basketball program. *Id.* at 10.

---

[2] The court relies on the pleadings to recount this background section. At this stage, the court is merely reciting allegations to judge relevancy for purposes of resolving this discovery dispute. Whether these allegations are ultimately proven is a question for another day.

Plaintiffs served a subpoena on WPD, a third party, seeking "any investigation files into Dana MacKenzie's [and Tyler Selk's] conduct covering the dates January 1, 2021, through the present." Dkt. 17 at 1–2. Defendants moved to quash the subpoena, arguing that the contents of the files are irrelevant to plaintiffs' First Amendment claim and that the files contain confidential information. *Id* at 2, 5.

The court invited WPD to file a response to the subpoena. Dkt. 19. WPD did not formally file anything, but the parties included in their submissions an e-mail from the attorney for the Village of Waunakee, which stated that the Village took no position on the dispute and that the requested files were compiled and prepared to be released. Dkt. 22-1.

## LEGAL STANDARD

"The scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule26(b)(1)." *In re Kleimar N.V. v. Benxi Iron & Steel Am., Ltd.*, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017). Rule 26(b)(1) of the Federal Rules of Civil Procedure limits the scope of discovery to any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. In concert, Rules 45 and 26(b)(1) allow a court to modify or quash a subpoena that seeks irrelevant information. *Mfg. Sys., Inc. of Milwaukee v. Computer Tech., Inc.*, 99 F.R.D. 335, 336 (E.D. Wis. 1983).

## ANALYSIS

The court addresses the question of standing first and then turns to the merits.

### A. Standing

A litigant has standing to challenge a non-party subpoena when the subpoena "infringes on the movant's legitimate interests," *Antetokounmpo v. Maree, Inc.*, No. 23-CV-1389-JPS, 2024 U.S. Dist. LEXIS 9083, at *3–4 (E.D. Wis. Jan. 18, 2024), including even minimal privacy interests in the information possessed by the non-party. *Russell v. City of Chi.*, No. 20-cv-1163, 2022 U.S. Dist. LEXIS 17809, at *3–4 (N.D. Ill. Feb. 1, 2022). Plaintiffs recite this standard in their briefing, dkt. 21 at 3, but do not raise any real challenge to defendants' standing to bring their motion. Based on the record before it, the court finds defendants have asserted a "minimal privacy interest" in the information at issue because the investigation carried out by WPD implicated their business endeavors and their finances. This is sufficient to show standing, and so the court will turn to the merits.

### B. Relevancy

Whether information is relevant depends on the substantive law of the case, specifically here, the First Amendment. To establish a First Amendment retaliation claim, plaintiffs must make out a prima facie case that (1) their speech was constitutionally protected, (2) the defendants took adverse action against plaintiffs, and (3) the defendants' adverse action was motivated at least in part by plaintiffs' protected speech. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Defendants argue that information contained in the investigative files would not speak to any of these elements. Dkt. 17 at 3–4. Plaintiffs respond by articulating four theories: (1) the files will show Mark's speech was protected insofar as it was not made in bad faith or with reckless disregard for the truth, dkt. 21 at 3–4; (2) the files may show defendants reasonably believed Mark's statements were false, which, if true, would allow them to defeat

4

plaintiffs' claim, *Id.* at 4–5; (3) the files may identify other parents who complained about defendants, *Id.* at 5; and (4) the files may contain defendants' statements indicating intent to retaliate against plaintiffs, *Id.* at 4.

The court addresses each in turn.

### 1. Bad faith or reckless disregard for the truth

Protected speech may lose its First Amendment protection if it is knowingly false or made with reckless disregard for the truth. *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 942 (7th Cir. 2004) (explaining speech "loses its First Amendment protection if the [plaintiff] knew it was false or made it in reckless disregard of the truth."). Plaintiffs recite this maxim to make a case for relevancy, arguing that the files at-issue "undoubtedly captured" Mark's conversation with police regarding the evidence he possessed of defendants' alleged scheme, and thus will "speak directly to whether [Mark] believed the claims he was making were true." Dkt. 21 at 4.

As a threshold matter, it is not entirely clear from plaintiffs' pleadings or the parties' briefing whether the alleged protected speech at issue in this case consists of the remarks Mark made at the school board meeting, the reports Mark made to police, or both. But even giving plaintiffs the broadest interpretation on this point, the investigatory files sought won't speak to Mark's state of mind. As plaintiffs acknowledge, these files would have merely "captured" whatever Mark told the police. Plaintiffs' argument relies on flawed circular reasoning. Moreover, Mark himself should have the evidence that he provided to police, so there is no need to seek that information from another source.

5

### 2. Defendants' reasonable belief that Mark's statements were false

The court is equally unpersuaded by plaintiffs' argument about defendants' reasonable belief that Mark's speech was false. Plaintiffs rely on *Swetlik v. Crawford*, 738 F.3d 818, 827 (7th Cir. 2013), which held that an employer may defeat a First Amendment retaliation claim if supervisors reasonably believed, after an adequate investigation, that the employee's testimony was false, even if it actually was true. We do not have an employer-employee scenario here, so the citation is inapt. But even if this "reasonable belief" defense was available to defendants, for the reasons described above, the investigative files will not speak to the defendants' beliefs in the veracity of Mark's claims.

### 3. Identifying other parents

Plaintiffs also argue the files may "plausibly identify other parents who complained" about defendants, and that, "[i]f the defendants retaliated against children for [*sic*] other families, [or if they did not], it bears on causation." Dkt. 21 at 5. The court disagrees. Plaintiffs' claims require plaintiffs to focus on their alleged protected speech and the alleged retaliation against them. Casting about for other parents that may have brought their complaints to the WPD will not advance the case and risks unproductive side-shows. Plaintiffs' brief argument on causation is conclusory, underdeveloped, and unpersuasive, and the court rejects it. *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived[.]").

### 4. Evidence of intent to retaliate

Finally, plaintiffs argue that the files may contain statements that defendants gave to WPD, which plaintiffs allege may show defendants asked about Mark in the context of the

6

investigation. Plaintiffs say that this is relevant because, if defendants asked about Mark and his involvement in the accusations, that may buttress their theory that defendants believed they had reason to act out against plaintiffs, ultimately cutting Jake from the team. *See* dkt. 21 at 4. The theory does not have much meat on it, but the court agrees that if defendants gave statements to the WPD, those statements may shed light on their intent and motivations.

Under Rule 26, the court weighs plaintiffs' show of relevancy against the burden of producing the files. Here, no evidence of burden has been presented. To the contrary, the files are already compiled for disclosure by the Village of Waunakee Attorney, assuaging any concerns about undue burden. *See* dkt. 22-1 at 3. So, even though the relevance is somewhat light, the burden is even less so. On balance, the court is persuaded that these limited files are discoverable.

Accordingly, the court GRANTS in part and DENIES in part plaintiffs' motion to quash, MODIFIES the subpoena to seek only those files that contain statements made by defendants, and ORDERS the WPD to produce those limited files to the parties in this case for designation under a protective order, discussed next.

**C. Confidentiality**

Because the court accepts one of plaintiffs' theories of relevance, it now addresses confidentiality. Defendants note that the files may concern confidential, private information, including financial information. Dkt. 17 at 5. Plaintiffs respond by insisting any information contained in the files cannot be private because the files are subject to open records requests under Wisconsin Statutes §§ 19.31–19.39. Dkt. 21 at 5.

As a threshold matter, whether and how Wisconsin's open records law applies to the files is of no moment. This court applies federal rules to this discovery dispute. *Arms v.*

*Milwaukee Cnty.*, No. 18-CV-1835, 2020 WL 5292146, at *1 (E.D. Wis. Sept. 4, 2020). Plaintiffs can assess for themselves whether they want to avail themselves of the open records process, but this is not the forum.

As it stands, the public-or-private nature of the files is unresolved, and the court will not prejudge their confidential nature without knowing their contents. To address defendants' concerns, the court will allow the parties to review the files upon their production and designate them confidential, if appropriate. To facilitate this, the court ORDERS the parties to submit a joint proposed protective order to govern discovery produced in the case. The parties should treat the investigative files as confidential until the court enters the protective order, and the parties have had an opportunity to consider its applicability to the files.

ORDER

IT IS ORDERED that:

1. Defendants' motion to quash, Dkt. 17, is GRANTED in part and DENIED in part, as set forth above.

2. Plaintiffs are ORDERED to serve this order on the Waunakee Police Department and to file a certificate of service with the court.

3. Plaintiffs and defendants are ordered to file a stipulated protective order with the court by November 22, 2024.

4. Plaintiffs' motion for a hearing, Dkt. 23, is DENIED as moot.

Entered November 8, 2024.

BY THE COURT:

/s/

_____
ANITA MARIE BOOR
Magistrate Judge