IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK WHALEN
and JAKE WHALEN,

                    Plaintiffs,                              OPINION and ORDER

        v.
                                                              24–cv–342–jdp

DANA MACKENZIE (in his individual capacity)
and TYLER SELK (in his individual capacity),

                    Defendants.

---

This case is about alleged retaliation at Waunakee High School. Plaintiff Mark Whalen is the father of plaintiff Jake Whalen, who played on the boys varsity basketball team. Defendants Dana MacKenzie and Tyler Selk were basketball coaches at the high school. The Whalens allege that defendants stopped allowing Jake to play and then cut him from the team, not because Jake's performance declined, but because the Whalens were complaining about defendants, first accusing them of financial misconduct and then of retaliating against Jake. The Whalens assert claims against defendants under the free speech clause of the First Amendment.

Defendants move to dismiss for failure to state a claim upon which relief may be granted, contending that the Whalens have not alleged a clearly established violation of the First Amendment, so defendants are entitled to qualified immunity. The court concludes that the Whalens have stated a plausible claim and that the facts alleged in the complaint do not show that defendants are entitled to qualified immunity.

The retaliation alleged by the Whalens did not involve the loss of liberty or livelihood, as many retaliation claims do. But that is not required to support a First Amendment claim.

Playing a varsity sport is an important part of the high school experience for many students. At the pleading stage, it is reasonable to infer that depriving a high school student of that experience could deter the average student and his parent from speaking out against a coach. It is also reasonable to infer from the Whalens' allegations that both defendants were displeased with the Whalens' accusations and that defendants used their authority over Jake to retaliate against the Whalens. That is all that is required to state a claim under the First Amendment, so the court will deny the motion to dismiss. Whether the Whalens can prove their allegations is a question for a motion for summary judgment or trial.

ALLEGATIONS OF FACT

The following allegations are taken from the complaint and are accepted as true for the purpose of defendants' motion to dismiss. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Jake Whalen attended Waunakee High School, graduating in 2024. During the 2021–22 basketball season, Jake was a captain and starter on the Waunakee junior varsity boys basketball team. Dana MacKenzie was the head coach of both the junior varsity and varsity basketball team. Tyler Selk was the assistant coach.

At the end of the season, a group of parents, including Mark Whalen, tried to remove MacKenzie as head coach, "at least in part" because of concerns about financial misconduct related to "Waunakee Hoops," a youth basketball camp operated by defendants. Dkt. 6, ¶ 15. The camp used Waunakee High School basketball courts, but defendants did not pay the high school a rental fee, even though the camps were privately run and charged athletes to participate. Mark and other members of the group believed that defendants were keeping

money that should have gone to the school district or been spent on the camp. The identities of the parents in the group were not disclosed initially.

In October 2022, Mark publicly raised his concern about defendants during a Waunakee School Board meeting, contending that defendants were keeping money from their camps that should gone to the school district. MacKenzie attended that meeting.

MacKenzie and Selk returned to coach the Waunakee boys' basketball teams for the 2022–23 season. Jake made the varsity team. The Whalens do not say whether Jake made the team before or after the school board meeting.

Jake was "one of the top ten players on the team." *Id.*, ¶ 22. But MacKenzie significantly reduced Jake's playing time over the course of the season. The Whalens say that Mark was "persist[ing] with his free speech" during that time, *id.*, ¶ 20, but they do not identify additional public statements that Mark made about defendants after the school board meeting.  By the end of the season, Jake's playing time was "all but eliminated," even though he was a better player than some of the players who were in the rotation. *Id*., ¶ 22.

After the 2022–23 season, the school district did not renew MacKenzie's coaching contract. (The Whalens do not say whether that decision was related to Mark's accusations.) Selk became the head coach, beginning with the summer 2023 season.

Selk did not allow Jake to play at several of the summer games. During one game, Selk asked Mark "how he felt" about Jake not playing, and Selk told Mark, "It didn't have to be this way." *Id.*, ¶ 29. Mackenzie's brother was also at that game. As the Whalens were leaving, the brother said to them, "Karma's a bitch." *Id.*

In August 2023, Mark contacted the Waunakee Police Department, alleging that defendants "had been funneling funds from the booster club back to themselves." *Id.*, ¶ 34.

3

The Whalens do not say what laws they believed defendants had violated, but Mark's report instigated a four-month criminal investigation into defendants. During interviews with the Waunakee police, both MacKenzie and Selk asked whether Mark was behind the complaint. (The Whalens do not say anything about the results of the investigation.)

In October 2023, Jake met with the Waunakee High School principal and Selk to discuss Jake's place on the basketball team. During this meeting, Jake told Selk that he believed Selk was retaliating against him because of the things his father said, and he wanted to be treated fairly.

In November 2023, Selk led a preseason meeting for potential team members and their parents. Selk said, "I feel bad for our old coach, but I am still here . . . . You are either all in or all out, and we are going to weed out the toxic parents." *Id.*, ¶ 37.

Tryouts for 2023–24 season were held shortly after the meeting. Selk made Jake practice with the freshman players, and the Whalens believe that was solely to humiliate Jake. Jake "performed very well" during tryouts, and he "met every requirement for the team," but Selk cut him, even though he was a better player than several of the boys who made the team. *Id.*, ¶¶ 39–41.

ANALYSIS

The Whalens assert three retaliation claims under the First Amendment in their amended complaint:

1) MacKenzie retaliated against Mark by reducing Jake's playing time because of Mark's allegations that defendants were engaging in financial misconduct;

2) Selk retaliated against Mark by cutting Jake from the basketball team because of Mark's allegations against defendants; and

3) Selk retaliated against by Jake cutting him from the team because of Jake's statements about Selk during the October 2023 meeting with the principal.

A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected speech; (2) the defendant took action that would dissuade the average person from speaking out; and (3) the defendant took the adverse action because of the plaintiff's protected speech. *Harnishfeger v. United States*, 943 F.3d 1105, 1112–13 (7th Cir. 2019); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Defendants contend that the Whalens' amended complaint does not satisfy any of those elements. Defendants also contend that they are entitled to qualified immunity.

To defeat a motion to dismiss, the plaintiff must "plead a plausible claim for relief," *Balle v. Kennedy*, 73 F.4th 545, 557 (7th Cir. 2023), which means that the complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations and speculation are not enough. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020).

The court will first consider whether the Whalens have adequately alleged each of the elements of their retaliation claims and then consider whether defendants are entitled to qualified immunity.[1]

## A. Protected speech

Both of the Whalens contend that they engaged in protected speech. Mark points to his allegations that defendants were engaging in financial misconduct, including his comments to the school board and the police department. Jake points to his statements during his October 2023 meeting with Selk and the principal, accusing Selk of retaliating against him because of his father's accusations.[2] Defendants contend that neither plaintiff engaged in protected speech.

Neither side cites any Supreme Court or Seventh Circuit law regarding what legal standard applies to determining whether the Whalens' speech was protected, and neither side develops an argument regarding what standard should apply. Plaintiffs discuss the standard for public employees, which asks whether the employee spoke as a private citizen on a matter of

---

[1] One recent case states that the plaintiff need not to plead "facts corresponding to elements." *Thomas v. JBS Green Bay, Inc.*, 120 F.4th 1335, 1338 (7th Cir. 2024). That statement appears to be inconsistent with the statement in *Iqbal* quoted above, as well as other circuit precedent that has held or assumed that the complaint must include support for each element, either directly or through reasonable inferences. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) ("[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."), *quoted with approval in Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007). *See also Morris v. Scott*, 840 Fed. Appx. 14, 15–16 (7th Cir. 2021) (plaintiff must plead elements of retaliation claim); *Luevano v. Wal-Mart Stores*, Inc., 722 F.3d 1014, 1029 (7th Cir. 2013) (same). The court need not resolve the tension in the case law because the Whalens have satisfied both standards.

[2] Defendants say in their opening brief that Jake cannot base his claim on Mark's speech. But Jake is relying on his own speech, so that argument fails.

public concern, and whether the employee's interest in speaking is outweighed by the interest of the government employer in promoting effective and efficient public service. *Matrisciano v. Randle*, 569 F.3d 723, 732–33 (7th Cir. 2009). But after citing this standard, the Whalens question whether it should apply, suggesting instead that the court should apply the standard that applies to criminal statutes, which protects all speech except for a few categories, such as obscenity and true threats. Dkt. 14, at 10 (citing *U.S. v. Alvarez*, 567 U.S. 709 (2012)). But the Whalens do not explain why either standard should or should not apply. For their part, defendants do not cite any standard. Instead, they quote the statement in *Place v. Warren Local School District Board of Education* that the First Amendment does not apply to "complaints . . . related to coaching decisions" in a high school sports program. No. 21-cv-965, 2023 WL 4826292, at *7 (S.D. Ohio Jul. 26, 2023).

The Supreme Court has not applied one standard for all student speech or speech in the school setting. *Tinker v. Des Moines Independent Community School District* is the seminal case, holding that a student's political speech is protected unless it would "materially and substantially disrupt the work and discipline of the school." 393 U.S. 503, 514 (1969). But the Court has qualified *Tinker* in subsequent cases, holding that a school could censor a student's "lewd and indecent" speech and speech promoting drug use, regardless of whether the speech was disruptive. *See Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986) (lewd speech); *Morse v. Frederick*, 551 U.S. 393, 397 (2007) (speech promoting illegal drug use). The Court has also said that *Tinker* may not be protective enough in some contexts, holding in *Mahanoy Area School District v. B. L. by and through Levy* that a school's authority to censor a student's speech is "diminished" when the speech occurs off campus. 594 U.S. 180, 180–81 (2021).

It does not appear that the Supreme Court or the Court of Appeals for the Seventh Circuit has considered how to evaluate the speech of a student's parent in the school context. The court in *Place* concluded that speech made in the context of a high school sports program is governed by *Tinker*, regardless of whether the speaker is a student or parent. But *Place* is undermined by *McElhaney v. Williams*, which held that the standard is different for students and parents and that parents' speech to school officials has greater protection because school officials have no supervisory role over parents. 81 F.4th 550, 557–59 (6th Cir. 2023).

It seems unlikely that the standard for public employee speech would apply in this case. Neither side cites any courts applying it to students or their parents. Jake's speech occurred on campus, so that points toward *Tinker* and its progeny as providing the relevant standard. As for Mark's speech, there is a strong argument that it is entitled to heightened protection. Mark's speech was not made in the school context, but to the school board and law enforcement, so the logic of *Place* does not apply.

But the court need not decide which of these standards applies to resolve the motion to dismiss. Even if the court applies the narrowest protection, the Whalens have adequately alleged that they engaged in protected speech. Regardless of whether defendants were engaging in the "fraudulent use of money" as the Whalens contend, Dkt. 6, ¶ 15, Mark's speech touched on issues related to the school district's finances, which is an issue of public concern. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 671–72 (7th Cir. 2009); *Wainscott v. Henry*, 315 F.3d 844, 849 (7th Cir. 2003). Jake's allegation of retaliation is about another type of official misconduct, so it too could be a matter of public concern. Neither Mark nor Jake's speech was indecent, threatening, or promoting illegal conduct. Mark's speech may have been "disruptive" to MacKenzie's employment, but the allegations in the complaint do not suggest

that the operations of the basketball team itself were disrupted. And *Place* is not on point because Mark and Jake were complaining about alleged misconduct, not bad coaching decisions.

In their reply brief, defendants contend for the first time that Jake's allegations about his protected speech "are too vague to state a claim." Dkt. 16, at 3. Defendants cite *Marmarchi v. Board of Trustees of University of Illinois*, 715 Fed. Appx. 529, 532 (7th Cir 2017), which stated that it is not enough to allege "unspecified 'unlawful' conduct" to state a retaliation claim. That is not what Jake alleges in this case. Rather, he says that he accused Selk of retaliating against him for his father's speech. That gives Selk adequate notice of Jake's speech to satisfy federal pleading standards.

The court concludes that the Whalens have adequately alleged they engaged in speech protected by the First Amendment.

## B. Adverse action

An adverse action supports a First Amendment claim if "the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646–47 (7th Cir. 2020). This is a question of fact unless the alleged injury is "truly minimal." *Id.* at 647. The Whalens identify two alleged adverse actions: (1) MacKenzie reducing Jake's playing to "nearly zero minutes" during the 2022–23 season; [3] and (2) Selk cutting Jake from 2023–24 team. [4] Those were actions taken

---

[3] Only Mark asserts a claim based on MacKenzie's conduct, presumably because Jake's speech occurred after MacKenzie was no longer the coach.

[4] The Whalens also allege that Selk was responsible for Mark's younger son not being chosen to play in a "celebrity softball game." Dkt. 6, ¶¶ 50–54. But the Whalens say nothing about that issue in their brief, so the court does not consider it.

against Jake, but both sides assume for the purpose of the motion to dismiss that an injury to Jake would also be an injury to Mark, so the court will do the same. *Cf. Thompson v. North American Stainless, LP,* 562 U.S. 170, 174 (2011) ("We think it obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiance would be fired.").

Several courts have held that being cut or suspended from a school sports team can qualify as retaliation under the First Amendment, including one of the cases cited by defendants. *See Pinard v. Clatskanie Sch. Dist. 6J,* 467 F.3d 755, 771 (9th Cir. 2006); *Henley v. Tullahoma City School System,* 84 Fed. Appx. 534, 540 (6th Cir. 2003); *Seamons v. Snow,* 84 F.3d 1226, 1236 (10th Cir. 1996); *Hening v. Adair,* 644 F. Supp. 3d 203, 209 (W.D. Va. 2022); *B.L. by and through Levy v. Mahanoy Area School District,* 376 F. Supp. 3d 429, 439–41 (M.D. Pa. 2019), *aff'd, Mahanoy Area School District,* 594 U.S. 180; *Place,* 2023 WL 4826292, at *4. Defendants cite no contrary cases.[5]

At issue in *B.L.* was whether a one-year suspension from the cheerleading squad qualified as an adverse action. The district court concluded that it was, reasoning that even "minor discipline" is sufficient to trigger the First Amendment. *B.L.,* 376 F. Supp. 3d at 440. On appeal, the Court of Appeals for the Third Circuit affirmed, rejecting the school district's argument that the First Amendment is not triggered by an exclusion from an extra-curricular activity. *B.L. by and through Levy v. Mahanoy Area School District,* 964 F.3d 170, 181–82 (3d Cir.

---

[5] In their reply brief, defendants cite *Lowery v. Euverard,* 497 F.3d 584, 600–01 (6th Cir. 2007), for the proposition that being removed from a school sports team is not an adverse action under the First Amendment. But that was not the court's holding. As the Court of Appeals for the Sixth Circuit recently explained, *Lowery* held that "the students did not have a valid First Amendment claim because the coach legitimately feared that the speech would disrupt the team's educational goals" *McElhaney,* 81 F.4th at 557–59. So *Lowery* is not on point.

2020). The Supreme Court did not discuss the adverse-action element in its decision, but it did hold that the school district violated the First Amendment by suspending the student from the cheerleading squad. *Mahanoy Area School District*, 594 U.S. at 193–94. No Justice, including the lone dissenter, questioned whether the suspension from the team was sufficiently adverse to trigger the First Amendment.

These cases are consistent with common sense. Playing sports is an important part of many students' high school experience, supporting their physical and mental health and preparing them for the future. Membership on a team can provide the student with comradery and status, create a sense of accomplishment, and teach life skills. Sports may also serve as the basis for college admissions and scholarships. Because of this, it is reasonable to infer that losing the ability to play the student's chosen sport would deter the average student—and the student's parents—from speaking out against a coach.

It does not matter that the plaintiffs in this case were not deterred and continued to speak out. The standard is objective. It is about the ordinary person in the plaintiff's circumstances, so the actual effect on the plaintiff is not dispositive. If it were otherwise, it would be impossible to prevail on a First Amendment retaliation. The lawsuit itself shows that the plaintiff was not deterred. *Douglas*, 964 F.3d at, 646–47.

The parties do not cite many examples of cases considering whether reduced playing time qualifies as an adverse action. But in *Hening*, the court had "no trouble" concluding that the First Amendment was triggered by a coach's decision to remove a college player from the starting lineup of her soccer team and reducing her playing time. 644 F. Supp. 3d at 209. In this case, the Whalens allege that MacKenzie reduced Jake's playing time to "nearly zero minutes" before Jake was cut from the team the following season. Dkt. 6, ¶ 56. In some ways,

11

that is essentially the functional equivalent of being cut from the team. So it is reasonable to infer that MacKenzie's conduct would deter the average high school student or parent.

Defendants cite two district court cases to support a contrary conclusion, but one is not on point and the other is inconsistent with controlling law. In *Wright v. Denison Independent School District*, a student alleged that his coach retaliated against him "by not playing him at first base and not talking to him." 2018 WL 3970477, at *3–5 (E.D. Tex. 2018). In granting summary judgment to the coach, the court questioned whether the coach's conduct was sufficiently adverse to support a First Amendment claim, but the court ultimately dismissed the claim for lack of evidence on the element of causation. *Id.* Regardless, the Whalens' alleged harms are more serious than what was alleged in *Wright*. This court does not hold that *any* unfavorable coaching decision can trigger a First Amendment claim. The decision must be significant enough to deter speech. But being benched or cut from the team meets that standard.

In *Johnson v. Washoe County School District*, the plaintiff alleged that her high school coach "eliminated her playing time . . . and ostracized her from the team" after her parents criticized the coach's methods. 2024 WL 196523, at *1 (D. Nev. 2024). The court dismissed the claim sua sponte, in part because the plaintiff's alleged harm was not sufficiently adverse, reasoning that "[a]dverse action by school officials [must] involve[] objectively egregious behavior." *Id.* at *5.

The standard applied in *Johnson* is inconsistent with the law of this circuit and the Supreme Court, which does not require "egregious" behavior to support a First Amendment retaliation claim. Again, the question is whether the defendant's conduct is "so trivial that a person of ordinary firmness would not be deterred." *Pieczynski v. Duffy*, 875 F.2d 1331, 1333

(7th Cir. 1989). The deterrent effect "need not be great in order to be actionable." *McKinley v. Schoenbeck*, 731 Fed. Appx. 511, 515 (7th Cir. 2018). The Supreme Court has observed, citing the Seventh Circuit, that "the First Amendment . . . protects state employees . . . from even an act of retaliation as trivial as failing to hold a birthday party for a public employee." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 n. 8 (1990). So the court declines to follow *Johnson*.

The court concludes that the Whalens have adequately alleged that an average student or parent of a student would be deterred from speaking out against a coach if the coach benched the student or cut him from the team.

## C. Causation

The last element of a retaliation claim is causation. The plaintiff must show that his protected activity was at least a motivating factor for the adverse action. *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). At the pleading stage, the Whalens' burden is low: they must "plausibly explain what led [them] to believe [their] treatment was because of the protected activity." *Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022). Plaintiffs' allegations meet that standard.

As for the claims based on Mark's speech, the Whalens include the following allegations in their complaint:

- MacKenzie reduced Jake's playing time after Mark raised his concerns about defendants' basketball camps to the school board, and Selk cut Jake from the team after Mark made a report to the police about defendants;

- Jake was a better player than team members who played more than he did and who made the varsity team in 2023–24;

- In the context of a discussion about Jake's lack of playing time, Selk told Mark, "It didn't have to be this way";

- At the end of a game during which Jake did not play, Mackenzie's brother told the Whalens, "Karma's a bitch";

- During tryouts for the 2023–24 season, Selk took the unusual step of making Jake practice with freshman players;

- During a speech in which Selk expressed sympathy toward MacKenzie after his termination, Selk told a group of students and parents that he was going to "weed out toxic parents" just before he cut Jake from the team.

The above allegations—which the court must accept as true— are more than enough to state a plausible claim. The Whalens allege that MacKenzie attended the school board meeting and that both defendants suspected that Mark was behind the report to the police, so it is reasonable to infer that both defendants knew the source of the accusations. The Whalens also allege that Selk and a person close to MacKenzie made statements to the Whalens that could be reasonably construed as threatening or inculpatory. Finally, the Whalens allege that the adverse actions occurred shortly after Mark spoke out against defendants and that Jake's performance cannot explain defendants' decisions. At the pleading stage, this provides more than enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[6]

---

[6] The court noted previously that the Whalens do not specify in their complaint whether Mark publicly accused defendants of misconduct before or after Jake made the varsity team for the 2022–23 season. If Jake made the team after the public accusation, that could undermine an inference that MacKenzie benched Jake because of Mark's speech. But that sort of scrutiny of the facts is better reserved for summary judgment or trial, not a motion to dismiss.

As for Jake's claim against Selk, the Whalens have not alleged as many facts connecting Selk's decision to cut Jake from the team with Jake's accusation that Selk was retaliating against him. But Jake's speech is intertwined with his father's speech, and the Whalens' allegations support a plausible inference that Selk bore a grudge against Jake. A defendant can be motivated to retaliate by more than one person's speech. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014) ("A single event can have multiple but-for causes."). It is plausible to infer that Selk would be upset by the meeting with Jake during which accused Selk of retaliation in front of the school principal. That is enough to allow Jake's claim to proceed. It would be premature at the pleading stage to require the Whalens to parse Selk's possible retaliatory motivations. S*ee Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 829 (7th Cir. 2014) (criticizing district court's "parsing of events" at pleading stage because it "lost sight of the bigger picture, which showed an ongoing pattern of retaliation").

Defendants cite no authority requiring the Whalens to provide more detail than what they provided. Instead, defendants cite cases discussing what the plaintiffs must *prove* in response to a motion for summary judgment. *See Nieves v. Bartlett*, 587 U.S. 391 (2019); *Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009). Those cases are not instructive in assessing Whalen's pleading burden. In other cases involving similar types of allegations supporting a retaliation claim, the court of appeals has allowed the claim to go forward. *See, e.g., U.S. ex rel. Sibley v. University of Chicago Medical Center*, 44 F.4th 646, 663 (7th Cir. 2022) (suspicious timing and conduct); *Morris*, 840 Fed. Appx. at 15–16 (suspicious statements of the defendant); *Luevano*, 722 F.3d at 1018 (suspicious timing of multiple adverse actions).

Defendants contend that the Whalens' allegations are not plausible in light of a declaration that Selk filed with defendants' motion to dismiss. But the declaration cannot help

defendants for two reasons. First, it is well established that a defendant may not support a motion to dismiss with a document that is not discussed in the complaint. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012). If defendants believe that the Whalens' allegations are inconsistent with the evidence, defendants will have to support that contention in a motion for summary judgment.

Second, even if the court considered the declaration, it would not require dismissal of any claim. The declaration purports to show that Jake had little playing time throughout the entire 2022–23 season. Dkt. 12. But the Whalens allege that the entire season occurred *after* Mark accused defendants of misconduct before the school board. So even if MacKenzie benched Jake for most of the season, that fact would not render implausible the inference that defendants treated Jake poorly because of Mark's accusations.

The Whalens have raised their right to relief above the speculative level and presented a story that holds together. That is all they were required to do. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). So the court concludes that the Whalens have stated a claim for retaliation under the First Amendment.

**D. Qualified immunity**

Even if a public employee violates the Constitution, he is entitled to qualified immunity if he did not violate clearly established law, or, in other words, if the law was not so clear at the time of the alleged violation that every reasonable official would understand that his conduct was unconstitutional. *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023). But it is unusual for a defendant to obtain dismissal on qualified immunity grounds at the pleading stage. This is because qualified immunity "so closely depends on the facts of the case," *Hardeman v. Curran*,

16

933 F.3d 816, 823 (7th Cir. 2019), and qualified immunity is a defense, so plaintiffs are not required to allegations that anticipate and overcome the defense, *Reed v. Palmer*, 906 F.3d 540, 548–49 (7th Cir. 2018).

Defendants say that they are entitled to qualified immunity defense for two reasons, and the court will limit its consideration to those reasons. First, defendants say that it is not clearly established that a child may bring a First Amendment retaliation claim based on a parent's protected speech. But Jake's claim is based on his own speech, not his father's, so that argument fails.

Second, defendants say that it is not clearly established that a coach can be held liable under the First Amendment liability for "making discretionary decisions about the makeup of a team." Dkt. 11, at 12. It is not clear what argument defendants are making here. If they mean to assert that discretionary decisions may not be subject to First Amendment scrutiny, that is incorrect. *Most* decisions by public officials involve some amount of discretion. What matters is not the amount of discretion the decisionmaker has, but the potential deterrent effect of the decision on speech. *Power v. Summers*, 226 F.3d 815, 820–21 (7th Cir. 2000).

If defendants mean to assert that it is not clearly established that being benched or removed from a school team can serve as the basis for a retaliation claim, the court disagrees. As an initial matter, defendants cite no cases in which a court applied the "clearly established" requirement to the question whether the defendant's conduct was sufficiently adverse. Rather, First Amendment cases applying a qualified immunity analysis generally involve questions about whether the plaintiff's speech is protected. *E.g., Harnishfeger v. U.S.*, 943 F.3d 1105, 1121 (7th Cir. 2019); *Chrzanowski v. Bianchi*, 725 F.3d 734, 742–43 (7th Cir. 2013); *Pearson v. Welborn*, 471 F.3d 732, 741–42 (7th Cir. 2006); *McGreal v. Ostrov*, 368 F.3d 657, 683–84 (7th

Cir. 2004). This makes sense because qualified immunity is about whether "the contours of a *right* are sufficiently clear," *Levin v. Madigan*, 692 F.3d 607, 622 (7th Cir. 2012) (emphasis added), not on the nature of the plaintiff's injury.

In any event, the court concludes that a reasonable person in defendants' position would know that benching a player or cutting him from the team could trigger a First Amendment claim. As previously discussed, the Court of Appeals for the Seventh Circuit has emphasized that an adverse action does not have to be severe to support a First Amendment claim. *Smith v. Fruin*, 28 F.3d 646, 649 (7th Cir.1994) ("[E]ven minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect as more drastic measures."). The Supreme Court strongly implied in *Mahanoy Area School District* that being removed from a high school sports team is sufficiently adverse to trigger First Amendment protections.

It is true that there is no express holding from the Supreme Court or the Seventh Circuit that the precise conduct at issue in this case is unlawful, but that is not required. "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In this case, it is obvious, both from the cases in other circuits previously cited and from basic First Amendment principles, that being benched or removed from a team could dissuade an average student or his parent from speaking out against a coach. That is enough to overcome qualified immunity, especially at the pleading stage. So the court will deny defendants' motion to dismiss.

ORDER

IT IS ORDERED that defendant's Dana MacKenzie and Tyler Selk's motion to dismiss the amended complaint, Dkt. 10, is DENIED.

Entered December 19, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge